UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GUANG CHEN, individually and on behalf of all others similarly situated, 8218 Burholme Avenue Philadelphia, PA 19111<br><br>           Plaintiff,<br><br>vs.<br><br>COGENT COMMUNICATIONS GROUP, INC., 1015 31st Street NW, Washington, DC 20007<br><br>DAVID SCHAEFFER and 1015 31st Street NW, Washington, DC 20007<br><br>THADDEUS G. WEED, 1015 31st Street NW, Washington, DC 20007<br>           Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## CLASS ACTION COMPLAINT

Plaintiff makes the following allegations, except as to allegations specifically pertaining to plaintiff, based upon the investigation undertaken by plaintiff's counsel, which investigation included analysis of publicly-available news articles and reports, public filings, press releases and other matters of public record.

## NATURE OF THE ACTION

1. This is a class action on behalf of all purchasers of the common stock of Cogent Communications Group, Inc. ("Cogent" or the "Company") between February 14, 2005 and June 7, 2005, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1337 and 1367 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

3. This action arises under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

4. Venue is proper in this District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b) and (c). Substantial acts in furtherance of the alleged fraud and/or its effects have occurred within this District, and Cogent maintains its principal executive offices at 1015 31st Street NW, Washington, DC 20007, which is within this District.

5. In connection with the acts and omissions alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

6. Plaintiff purchased Cogent common stock during the Class Period, as set forth in the accompanying certification which is incorporated herein by reference, and was damaged thereby.

7.  Defendant Cogent provides high-speed internet access and Internet Protocol Communications services. Cogent's principal offices are located at 1015 31st Street NW, Washington, DC 20007.

8.  The Individual Defendants, at all times relevant to this action, served in the capacities listed below and received substantial compensation:

| **Name** | **Position** |
| --- | --- |
| David Schaeffer | Chairman and Chief Executive Officer |
| Thaddeus G. Weed | Chief Financial Officer and Principal Accounting Officer |

9.  The Individual Defendants, as senior officers and/or directors of Cogent, were controlling persons of the Company. Each exercised their power and influence to cause Cogent to engage in the fraudulent practices complained of herein.

10. Each of the defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Cogent common stock, by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) defendants deceived the investing public regarding Cogent's business, its finances and the intrinsic value of Cogent common stock; and (ii) caused plaintiff and other members of the Class to purchase Cogent common stock at artificially inflated prices.

## SUBSTANTIVE ALLEGATIONS

11. The Class Period begins on February 14, 2005. On that day the Company filed a Form S-1 Registration Statement with the SEC for a secondary offering of its common stock. The Form S-1 was signed by defendants Schaeffer and Weed, among others. The Registration Statement contained the usual warning that purchasers in the offering might suffer dilution of their investment.

3

(*See* 2/14/05 Form S-1 at 17). There was no disclosure in the Form S-1 of the number of shares that would be sold pursuant to the offering or the price at which they would be sold. Cogent's stock price rose from $14.40 on Friday, February 11, 2005 to close at $15.80 on the next trading day, Monday, February 14, 2005.

12.  The foregoing Form S-1 Registration Statement was false and misleading because it failed to disclose that defendants intended to sell shares of Cogent common stock to the public at a materially reduced price from the stock's then-current market price. Defendants knew or recklessly disregarded that the sale of Cogent common stock at a material discount to its trading price would cause a steep decline in the market price of its shares held by plaintiff and other class members.

13.  On February 14, 2005, after the close of trading, the Company issued a press release announcing that it had filed a Registration Statement on Form S-1 relating to its sale of up to $86.3 million of its common stock in an underwritten public offering. The press release stated that Lehman Brothers was acting as bookrunner in the transaction.

14.  The foregoing press release was false and misleading because it failed to disclose the Company's intention to sell its common stock in the secondary offering at a materially reduced price from the stock's then-current market price.

15.  On March 22, 2005, Cogent issued a press release announcing "that its previously announced 1-for-20 reverse stock split of all outstanding shares of the company's common stock will be effective as of the start of trading on March 24, 2005. At that time each previously outstanding 20 shares of common stock will be combined into 1 share of common stock." The Company also stated in the press release that "[a]fter the reverse stock split the company will have approximately 32.4 million outstanding shares of its common stock."

4

16. On March 31, 2005 the Company filed its Annual Report for 2004 on Form 10-K with the SEC. The Form 10-K was signed by defendants Schaeffer and Weed, among others. The Form 10-K stated: "On February 14, 2005 we filed a Registration Statement to sell up to $86.3 million of shares of common stock in a public offering. There can be no assurances that the offering will be completed."

17. The foregoing statements in the Form 10-K were false and misleading for the reasons set forth in ¶12 above.

18. On April 7, 2005 Cogent filed Amendment No. 1 to its Form S-1 Registration Statement for the sale of its common stock. The amendment was signed by defendants Schaeffer and Weed, among others.

19. Amendment No. 1 contained the same boilerplate warning as the Form S-1 filed on February 14, 2005 relating to the possibility that purchasers in the offering might suffer "immediate and substantial dilution."

20. Amendment No. 1 to Form S-1 was materially false and misleading for the reasons set forth in ¶12 above.

21. On May 9, 2005, Cogent filed Amendment No. 2 to its Registration Statement on Form S-1. Amendment No. 2 was signed by defendants Schaeffer and Weed, among others.

22. Amendment No. 2 contained the same disclosure regarding dilution. In addition, Amendment No. 2 contained the following statement:

> The market price of our common stock could decline as a result of sales of a large number of shares of our common stock in the market after this offering or the perception that these sales could occur.

5

23.     The foregoing statements were false and misleading for the reasons set forth in ¶12 above. In addition, the statement regarding the market price of the Company's shares after the offering was false and misleading because defendants then knew or recklessly disregarded that the announcement of the $6.00 selling price for the shares registered in the secondary offering would substantially and immediately depress the then-current market price for Cogent common stock to the injury of plaintiff and other class members.

24.     On May 20, 2005, Cogent filed Amendment No. 3 to its Registration Statement on Form S-1. Amendment No. 3 was signed by defendants Schaeffer and Weed, among others.

25.     Amendment No. 3 stated:

Depending on market conditions at the time of the offering, and in view of the thin trading market for our common stock prior to the offering, it may be necessary for us to significantly increase the number of shares we offer and sell in the offering in order to achieve $75 million in gross proceeds.

26.     The foregoing statement was false and misleading for the reasons set forth above in ¶12. In addition, defendants' use of the phrase "depending on market conditions at the time of the offering" led investors to believe that the offering would be priced at then-prevailing market rates. Defendants knew or recklessly ignored that pricing the shares at a substantial discount to then-prevailing market prices would substantially depress the price of shares held by plaintiff and other class members.

27.     On May 23, 2005 at 9:29 a.m., the Company issued a press release announcing "that it intends to raise $75 million through the sale of shares of common stock in an underwritten public offering." According to this press release, "[t]he underwriters will have an option to purchase up to an additional 15% of the shares offered to cover over-allotments, if any." There was no disclosure of

the Company's intent to price the offering below then existing market prices for Cogent common stock.

28. On June 6, 2005, the Company filed Amendment No. 4 to its Registration Statement on Form S-1. Amendment No. 4 was signed by defendants Schaeffer and Weed, among others.

29. Amendment No. 4 contained disclosures about the expenses of issuing and distributing the common stock registered in the offering, set forth a history of the Company's recent sales of unregistered securities and contained the Company's financial statements as of December 31, 2003 and December 31, 2004. In Note B to the financial statements the Company discussed "management's plans, liquidity and business risks," but made no disclosure of the Company's plans to price the secondary offering well below Cogent's prevailing market price.

30. The foregoing Amendment No. 4 was false and misleading for the reasons set forth in ¶12 above.

31. On June 7, 2005, the Company's stock opened at $19.66 and closed at $10.12.

## THE TRUTH IS REVEALED

32. On June 7, 2005, after the close of trading, the Company announced "that it has agreed to sell 10,000,000 shares of common stock at a public offering price of $6.00 per share in a previously announced underwritten public offering." The Company also announced that Lehman Brothers was acting as "the sole book-running manager," and that Thomas Weisel Partners was acting as co-lead manager. CIBC World Markets and Friedman Billings Ramsey were acting as co-managers.

33. On June 8, 2005, after revelation of the sub-market offering price, the Company's stock price opened at $7.69, down $2.43 from the prior day's closing price, and closed at $7.15.

7

Shares of Cogent fell 29.4% after the company revealed that it would sell 10,000,000 shares of stock for $6.00 per share. The $6.00 price was a 41% discount to the June 7, 2005 closing price of $10.12. The Company's stock fell on volume of 5,372,400 shares -- far in excess of the Company's average daily trading volume of 136,033 shares.

34.     The Company's common shares have traded at a depressed price since the offering and currently sell for approximately $6.00 per share.

35.     On June 14, 2005, after the close of trading, Cogent announced that its underwriters had exercised their option to purchase an additional 1.5 million shares of stock. Cogent's common stock closed on June 14, 2005 at $7.04 per share.

36.     On June 17, 2005 the Company filed a Form 8-K stating that on June 13, 2005 it had closed its public offering of shares for $69 million.

## CLASS ACTION ALLEGATIONS

37.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all persons who purchased or otherwise acquired Cogent common stock between February 14, 2005 and June 7, 2005, inclusive (the "Class Period"), and who were damaged thereby. Excluded from the Class are defendants, members of the immediate family of each of the Individual Defendants, any subsidiary or affiliate of Cogent and the directors, officers and employees of Cogent or its subsidiaries or affiliates, or any entity in which any excluded person has a controlling interest, and the legal representatives, heirs, successors and assigns of any excluded person.

38.     The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to plaintiff at this time and

can only be ascertained through appropriate discovery, plaintiff believes that there are thousands of members of the Class located throughout the United States. As of July 11, 2005, there were reportedly more than 32.39 million shares of Cogent common stock outstanding. Throughout the Class Period, Cogent common stock was actively traded on the American Stock Exchange (an open and efficient market) under the symbol "COI." Record owners and other members of the Class may be identified from records maintained by Cogent and/or its transfer agents and may be notified of the pendency of this action by mail, using a form of notice similar to that customarily used in securities class actions.

39. Plaintiff's claims are typical of the claims of the other members of the Class as all members of the Class were similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

40. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

41. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

    a. whether the federal securities laws were violated by defendants' acts and omissions as alleged herein;

    b. whether defendants participated in and pursued the common course of conduct complained of herein;

c. whether documents, press releases, and other statements disseminated to the investing public and the Company's shareholders during the Class Period misrepresented material facts about the business, finances, financial condition and prospects of Cogent;

d. whether statements made by defendants to the investing public during the Class Period misrepresented and/or omitted to disclose material facts about the business, finances, value, performance and prospects of Cogent;

e. whether the market price of Cogent common stock during the Class Period was artificially inflated due to the material misrepresentations and failures to correct the material misrepresentations complained of herein; and

f. the extent to which the members of the Class have sustained damages and the proper measure of damages.

42. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this suit as a class action.

### APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD-ON-THE-MARKET DOCTRINE

43. At all relevant times, the market for Cogent common stock was an efficient market for the following reasons, among others:

a. Cogent common stock was listed under the symbol "COI" and actively traded on the American Stock Exchange, a highly efficient market;

  b. As a regulated issuer, Cogent filed periodic public reports with the SEC, which reports were readily available to members of the investing public via the Securities and Exchange Commission website;

  c. Cogent participated in one or more investment conferences during the class period, which were designed to expose the company to members of the professional investment community;

  d. Cogent regularly issued press releases which were released on a nationwide basis via the national newswires. Each of these releases was publicly available and entered the public marketplace. Articles concerning Cogent's financial prospects appeared in various national new outlets, including *The Washington Post*, CBS MarketWatch, and TheStreet.com

  44. The market for Cogent securities promptly digested current information with respect to Cogent from all publicly-available sources and reflected such information in Cogent's stock price. Under these circumstances, all purchasers of Cogent common stock during the Class Period suffered similar injury through their purchase of stock at artificially inflated prices and a presumption of reliance applies.

## **LOSS CAUSATION**

  45. Defendants' failure to disclose the likelihood that Cogent would sell 11.5 million shares of its common stock in a secondary offering at a materially lower price than the then current market price of the stock, artificially inflated and maintained the price of Cogent common stock throughout the Class Period.

  46. On June 7, 2005, after the close of trading, when defendants finally disclosed that the secondary offering would be priced at only $6.00 per share -- a 40% discount to its previous day's

trading price of $10.12 – Cogent's stock price dropped dramatically, from $10.12 on June 7, 2005 to $7.15 on June 8, 2005, $6.60 on June 9, 2005 and thereafter to the $6 to $7 range during the period preceding the filing of this complaint.

47. The $6.00 secondary offering price was also less than half of the price of Cogent's stock during the majority of the trading days in the Class Period.

48. Thus, defendants' failure to disclose their intent to price and sell the secondary offering at only $6.00, was a substantial and direct factor causing Cogent's common shares to drop on June 8, 2005, as alleged above.

49. Indeed, an article appearing in *TheStreet.com*, "Tech Stocks in Motion," on June 8, 2005 (by Mark Martinez), noted that: "Shares of Cogent Communications Group (COI:AMEX) ... fell 29.4% after the company said it would sell 10 million shares of stock for $6 apiece. The price represents a 41% discount to Tuesday's closing price of $10.12."

## NO SAFE HARBOR

50.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. The specific statements pleaded herein were not identified as "forward-looking statements" when made. Nor was it stated with respect to any of the statements forming the basis of this complaint that actual results "could differ materially from those projected." To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking was made the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Cogent who knew that those statements were false when made.

## SCIENTER ALLEGATIONS

51.     As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements, issued or disseminated by or in the name of the Company, were materially false and misleading; knew or recklessly disregarded that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violators of the federal securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding Cogent and its business practices, their control over and/or receipt of Cogent's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Cogent were active and culpable participants in the fraudulent scheme alleged herein. Defendants knew and/or recklessly disregarded the false and misleading nature of the information which they caused to be disseminated to the investing public. This case does not involve allegations of false forward-looking statements or projections but instead involves false statements concerning the Company's business, finances and operations. The ongoing fraudulent scheme described in this complaint could not have been perpetrated over a substantial period of time, as has occurred, without the knowledge and complicity of the personnel at the highest level of the Company, including defendants.

52.     As set forth above, defendants knew or recklessly disregarded that by pricing the public offering below then-prevailing market prices for Cogent common stock, existing shareholders would suffer losses. Throughout the Class Period, defendants failed in their public statements to warn investors of the strong possibility that the Company would price the offering at $6.00 per share.

## FIRST CLAIM
### (Violations Of Section 10(b) Of The Exchange Act And Rule 10b-5 Promulgated Thereunder Against All Defendants)

53. Plaintiff repeats and realleges each and every allegation contained above.

54. Each of the defendants: (a) knew or recklessly disregarded material adverse non-public information about Cogent's financial results and then existing business conditions, which was not disclosed; and (b) participated in drafting, reviewing and/or approving the misleading statements, releases, reports and other public representations of and about Cogent.

55. During the Class Period, defendants, with knowledge of or reckless disregard for the truth, disseminated or approved the false statements specified above, which were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

56. Defendants have violated §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder in that they: (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material facts or omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices and a course of business that operated as a fraud or deceit upon the purchasers of Cogent stock during the Class Period.

57. Plaintiff and the Class have suffered damage in that, in reliance on the integrity of the market, they paid artificially inflated prices for Cogent stock. Plaintiff and the Class would not have purchased Cogent stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' false and misleading statements.

## SECOND CLAIM
### Violation Of Section 20(a) Of The Exchange Act
### Against Defendants Schaeffer and Weed

58. Plaintiff repeats and realleges each and every allegation contained above.

59. The Individual Defendants (Schaeffer and Weed) acted as controlling persons of Cogent within the meaning of Section 20(a) of the Exchange Act. By reason of their senior executive and/or Board positions they had the power and authority to cause Cogent to engage in the wrongful conduct complained of herein.

60. By reason of such wrongful conduct, the Individual Defendants Schaeffer and Weed are liable pursuant to § 20(a) of the Exchange Act. As a direct and proximate result of these defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their purchases of Cogent stock during the Class Period.

**WHEREFORE,** plaintiff prays for relief and judgment, as follows:

A. Determining that this action is a proper class action and certifying plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure;

B. Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants= wrongdoing, in an amount to be proven at trial, including interest thereon;

C. Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees ands expert fees; and

D. Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: August 3, 2005

                                          Respectfully submitted,

                                          */s/ Keith J. Harrison*

                                          Keith J. Harrison (D.C. Bar No. 416755)
                                          **KING PAGANO HARRISON**
                                          1730 Pennsylvania Avenue, N.W.
                                          Suite 900
                                          Washington, D.C. 20006-4703
                                          Telephone: (202) 371-6800
                                          Facsimile: (202) 371-6770

                                          **VIANALE & VIANALE LLP**
                                          Kenneth J. Vianale
                                          Julie Prag Vianale
                                          2499 Glades Road, Suite 112
                                          Boca Raton, FL 33431
                                          Tel:    561-392-4750
                                          Fax:   561-392-4775

                                          **LAW OFFICES OF BRUCE G. MURPHY**
                                          Bruce G. Murphy
                                          265 Llwyds Lane
                                          Vero Beach, FL 32963
                                          Tel:    772-231-4202

                                          **Attorneys for Plaintiff**